**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DEBORAH A. MARKS and SAVANAH M. CHESTER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 16-1671 |
| UTICA FIRST INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |

## <u>Memorandum Opinion</u>

### I. Introduction

Deborah A. Marks and Savanah M. Chester bring this declaratory judgment action seeking a determination that Defendant Utica First Insurance Company ("Utica") had a duty to defend and indemnify its insured, James D. Lark, in an underlying personal injury action in which Mr. Lark was the driver in an automobile accident that injured Plaintiffs. (Docket No. 1-1). Because Utica declined to defend Mr. Lark in the underlying action, Plaintiffs also assert a claim of bad faith in violation of the Pennsylvania Bad Faith statute, 42 Pa. Cons. Stat. § 8371. (*Id.*).

Presently before the Court are the parties' cross-motions for summary judgment limited to a determination of the coverage issue. Specifically, Plaintiffs seek judgment as a matter of law that Utica had a duty to defend and indemnify under the applicable insurance policy (Docket No. 40), while Utica argues that it did not have a duty to defend or indemnify (Docket No. 44). The Motions have been fully briefed and the Court heard oral argument on July 14, 2017.

(Docket No. 56). After careful consideration of the parties' positions, and for the following reasons, Plaintiffs' motion for summary judgment will be denied, and Defendants' motion for summary judgment will be granted.

## II. Procedural History and Factual Background

### A. Procedural Background

Plaintiffs filed a complaint in the Court of Common Pleas of Beaver County, Pennsylvania on October 7, 2016, seeking a declaration that Utica had a duty to defend and indemnify and asserting a claim of bad faith in violation of the Pennsylvania Bad Faith statute, 42 Pa. Cons. Stat. § 8371. *Marks v Utica First Ins. Co*, Court of Common Pleas of Beaver County, No. 11323-2016, Ex. A to Notice of Removal (Docket No. 1-1, at 1-16). Utica timely removed the case to this court on November 10, 2016, based upon diversity of the parties. (Docket No. 1). Plaintiffs' federal action is based on Utica's declining to defend and indemnify its insured, James Lark dba Lark Landscaping, the owner of a Utica First Insurance Company Policy No. ART 5053893, providing commercial liability coverage. Ex. 1 to Pls.' State Court Complaint (Docket No. 1-1, at 17-115); Ex. A to Pls.' App'x; Ex. C to Def.'s App'x. During the course of the underlying personal injury action Mr. Lark agreed to assign his rights under his commercial liability insurance policy to Ms. Marks and Ms. Chester. Assignment of Claim, Apr. 5, 2016 (Ex. H to Pls.' App'x).

### B. Underlying Personal Injury Action

The underlying incident involved an October 11, 2014 automobile accident in which a vehicle driven by Ms. Marks, with Ms. Chester as a passenger, was hit by a vehicle pulling a trailer with lawn care equipment aboard driven by Mr. Lark. Ms. Marks, individually and as

2

guardian of her then-minor daughter Ms. Chester, filed a personal injury action (the "Underlying Action") against Mr. Lark and James D. Lark t/d/b/a/ Lark Landscaping on May 12, 2015, in the Court of Common Pleas in Mercer County at No. 2015-1444 (the "Underlying Complaint"). *Marks v Lark*, Court of Common Pleas of Mercer County, No. 2015-1444, Ex. 2 to Plaintiffs' State Court Complaint, attached as Ex. A to Notice of Removal (Docket No. 1-1, at 116-130); Pls.' Concise Stmt. Mat. Facts, ¶ 2 (Docket No. 42), Ex. B to Pls.' App'x (Docket No. 43); Def.'s Concise Stmt. Mat. Facts, ¶ 8 (Docket No. 46), Ex. B to Def.'s App'x (Docket No. 47).

As set forth in the Underlying Complaint, on October 11, 2014, Ms. Marks was driving her 2008 Jeep Patriot automobile northbound on Mercer Avenue in Hermitage, Pennsylvania. Underlying Compl. ¶¶ 5, 10-11. Ms. Chester, at the time a minor, was a passenger in the back seat. *Id.* ¶ 5. Mr. Lark was driving his 2007 Chevrolet Silverado southbound on Mercer Avenue on route to a landscape job. *Id.* ¶¶ 6, 7. Mr. Lark was "operating his aforesaid Silverado and pulling a two axle trailer with lawn care equipment aboard." *Id.* ¶ 8. At approximately 11:18 a.m., at the intersection of Mercer Avenue and Haywood Street, Mr. Lark attempted to make a left turn onto Haywood Street and struck Ms. Marks' vehicle causing injuries to both Plaintiffs. *Id.* ¶¶ 10-11.

Count I of the Underlying Complaint sets forth a negligence claim on behalf of Ms. Marks in which Plaintiffs allege that the damages and injuries sustained in the accident "were the direct and proximate result of the carelessness, recklessness and negligence of the Defendants." *Id.* ¶ 13. Specifically, Count I alleges that Mr. Lark was negligent in the following particulars:

> a. in that the said Defendant, James D. Lark, was an inexperienced, distracted and incompetent operator of said vehicle;

b. in that said vehicle was operated in a careless, reckless and negligent manner so as to cause same to strike the vehicle in which the Plaintiff traveled in;

c. in failing to have said vehicle under such control so as to avoid a collision with other vehicles lawfully on the roadway;

d. in failing to exercise the high degree of diligence and care required in the operation of motor vehicles at or near an intersection;

e. in failing to exercise the high degree of diligence and care required in the operation of motor vehicles in a high traffic area;

f. in operating said vehicle at said time and place in such a manner as to violate the Motor Vehicle Code of the Commonwealth of Pennsylvania, more specifically Section 3714 "Careless Driving";

g. in operating said vehicle at said time and place in such a manner as to violate the Motor Vehicle Code of the Commonwealth of Pennsylvania, more specifically Section 3322 "Vehicle Turning Left";

h. in failing to provide said vehicle with good and sufficient brakes and other proper and necessary appliances and equipment;

i. in making a left turn across traffic without first ascertaining that it was safe to do so;

j. in failing to have said vehicle under proper control and operating said vehicle at an excessive speed given the trailer equipment that was being pulled; and

k. in failing to pay attention to traffic.

*Id.* Count II of the Underlying Complaint sets forth a negligence claim on behalf of Ms. Chester in which Plaintiffs allege that the damages and injuries sustained in the accident "were the direct and proximate result of the carelessness, recklessness and negligence of the Defendants." *Id.* ¶ 22. Count II sets forth identical allegations detailing Mr. Lark's negligent conduct. *Id.* ¶ 22a.-l.

At the time of the accident, Mr. Lark was covered by an automobile insurance policy issued by Allstate Insurance Company, with single limit liability coverage of $300,000. Declaratory Judgment Compl. ¶ 9 (Ex. A to Notice of Removal (Docket No. 1). Allstate

provided a defense to Mr. Lark in the underlying litigation, ultimately paying the policy limits of $300,000 in partial settlement of the claims. *Id.*

The settlement also included Mr. Lark's agreement to participate in binding arbitration to determine damages. The arbitration was held on June 21, 2016, with the arbitrator awarding $731,427 to Ms. Marks and $2,885,700 to Ms. Chester. Arbitrator's Decision and Award (Ex. I to Pls.' App'x). As noted, Mr. Lark agreed to assign his rights under the Utica Policy to Ms. Marks and Ms. Chester. Assignment of Claim, Apr. 5, 2016 (Ex. H to Pls.' App'x). The assignment of rights under the Utica insurance policy arose because Utica had denied coverage both before and during litigation of the Underlying Complaint.

## C. The Utica Policy

The Utica First Insurance Company Policy (the "Policy") provides commercial liability coverage. The Policy contains a "Contractors Special Policy" with coverage for bodily injury liability requiring Utica to "pay all sums which an 'insured' becomes legally obligated to pay as 'damages' due to 'bodily injury'[] . . . caused by an 'occurrence' . . . during the policy period." (Docket No. 1-1 at 34.) The Utica Policy also provides that Utica has "the right and duty to defend in a suit seeking 'damages' which may be covered under the Commercial Liability Coverage." (Docket No. 1-1 at 37.)

### 1. Mobile Equipment Coverage

The Policy's "Supplemental Coverages" section includes a subsection titled "Mobile Equipment," which provides coverage for bodily injury "resulting from mobile equipment." (Docket No. 1-1 at 75 (amended).)

### 2. Exclusions

The Policy also contains an "Exclusions" section that generally states:

> "We" do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

(Docket No. 1-1, at 37.)

### a. Auto Exclusion

There is a specific exclusion for claims arising out of the operation or use of an auto

("Auto Exclusion") that states as follows:

> 5. "We" do not pay for "bodily injury" . . . that arises out of the ownership, operation, occupancy, renting, loaning, supervision, maintenance, use, entrusting, "loading or unloading" of an "auto" . . . or mobile equipment owned by, operated by, rented to, or loaned to any "insured".

(Docket No. 1-1, at 76 (amended).)

### b. Exception to the Auto Exclusion

An exception to the Auto Exclusion exists that refers to mobile equipment. The

exception states that the Auto Exclusion does not apply to:

> a.  "bodily injury" . . .  that arises out of "autos" or mobile equipment covered under Mobile Equipment Coverage.

(Docket No. 1-1, at 76 (amended).)

### c. Mobile Equipment Exclusion

Finally, the Policy contains a specific exclusion for claims arising out of transporting

mobile equipment ("Mobile Equipment Exclusion") that states as follows:

> 4. "We" do not pay for "bodily injury" . . . that arises out of transporting mobile equipment by an "auto" owned by, operated by, rented to, or loaned to any "insured".

(Docket No. 1-1, at 38.)

### 3. "Loading or Unloading" and "Transporting"

As noted, the Auto Exclusion states that Utica does not pay for injuries that arise out of the "loading or unloading" of mobile equipment. Plaintiffs interpret this language from the Auto Exclusion in conjunction with the exception to the Auto Exclusion to conclude that the Policy *does* provide coverage for injuries arising out of the "loading or unloading" of mobile equipment, in addition to the coverage for mobile equipment stated in the Supplemental Coverage section of the Policy. The Policy defines "loading or unloading" as follows:

"Loading or unloading" means the movement of property:

    a. Starting with after it is removed from the point where it has been accepted for transit by an "auto", aircraft, or watercraft;

    b. Continuing while it is in or on such "auto", aircraft, or watercraft; and

    c. Ending when it has been removed from the "auto". Aircraft, or watercraft at its point of destination.

This includes the movement of property by a hand truck or any mechanical device only when attached to an "auto", aircraft, or watercraft.

(Docket No. 1-1, at 32.) It is undisputed that the Policy's definition of the term "loading or unloading" includes the period when the equipment is being moved from one location to another by an automobile.

The term "transporting" is not defined within the Policy. Plaintiffs maintain that the term is ambiguous, while Utica contends that it is not ambiguous and should be given its ordinary meaning. If the term is not ambiguous Plaintiffs maintain there is a conflict between the exception to the Auto Exclusion and the Mobile Equipment Exclusion since both provisions

concern the movement of mobile equipment from one location to another. According to Plaintiffs the conflict arises because the exception to the Auto Exclusion appears to provide coverage for the movement of mobile equipment while the Mobile Equipment Exclusion appears to exclude coverage for the same activity. Utica disagrees.

### D. Utica's Denial of Coverage

Utica initially denied coverage in response to Mr. Lark requesting Utica to defend and indemnify him against Plaintiffs' claims in a letter dated January 5, 2015. Letter from Utica to Lark, Jan. 5, 2015, attached as Ex. D to Pls.' App'x. In its letter of denial Utica cited several policy provisions concluding that the policy does not provide any form of coverage of damages arising out of [the] incident" and that Utica will not defend or indemnify Mr. Lark or any other party in connection with the incident. Letter from Utica to Lark, Jan. 5, 2015, at 7 (Docket No. 47-3 at 8).

While the underlying litigation was proceeding in Mercer County, Plaintiffs' counsel asked Utica to reconsider its coverage position explaining the exclusion relied upon by Utica did not apply, and in any event the Policy provisions were ambiguous and unenforceable. Letter from Tocci to Utica, Nov. 6, 2015, attached as Ex. E to Pls.' App'x. On December 7, 2015, Utica declined to reconsider its coverage position relying on its January 5, 2015. Letter from Utica to Tocci, Dec. 7, 2015, attached as Ex. F to Pls.' App'x. On February 4, 2016, Mr. Lark's counsel wrote to Utica stating his opinion that the damages in the underlying litigation do fall within the scope of the Utica insurance policy and again requested that Utica reconsider its coverage position. Letter from Garbutt to Utica, Feb. 4, 2016, attached as Ex. G to Pls.' App'x.

Given Utica's denial of coverage and refusal to defend or indemnify Mr. Lark, Plaintiffs, as

assignees of Mr. Lark's rights under the Utica Policy filed the instant declaratory judgment and bad faith action.

## III. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby,* 477 U.S. at 248.

## IV. Discussion

Utica seeks judgment as a matter of law arguing that it had no duty to defend or indemnify because the Underlying Complaint seeks damages for injuries that arose out of an auto accident, which is excluded from coverage under the Policy's Auto Exclusion. (*See* Docket Nos. 45; 51; 55). Plaintiffs seek judgment as a matter of law arguing that Utica had a duty to defend under the Policy because the injuries were sustained in an accident that occurred when mobile equipment was being moved from one location to another. (*See* Docket Nos. 41; 50). Plaintiffs approach the issue of coverage by looking first to the Policy's Supplemental Coverage for mobile equipment to establish coverage, and then to the exception for mobile equipment to the Auto Exclusion to confirm coverage. (*Id.*). Under Plaintiff's interpretation of the Policy, if an auto accident occurs during the time when covered mobile equipment is being moved from one location to another then a sufficient causation connection exists as a matter of law to trigger coverage. (*Id.*).

As discussed below, the Court finds that there is no genuine dispute of material fact that that the Underlying Complaint alleges that the injuries arose out of Mr. Lark's negligent operation of his automobile. In addition, the Court holds as a matter of law that the injuries did not "arise out of" or "result from" mobile equipment under the terms of the Policy. Thus, the Court agrees with Utica that the Auto Exclusion applies in this case and Utica had no duty to defend or indemnify under the Policy. Finally, even if the allegations in the Underlying Complaint were construed so as to allege that the injuries arose out of the use of mobile equipment, the Mobile Equipment Exclusion would apply as the Court finds no ambiguity or conflict in the Policy.

### A. Applicable Law

"In actions arising under an insurance policy, [Pennsylvania] courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy." *Erie Ins. Grp. v. Catania*, 2014 PA Super 136, 95 A.3d 320, 322 (Pa. Super. 2014) *(citing* *McEwing v. Lititz Mut. Ins. Co.*, 2013 PA Super 171, 77 A.3d 639, 646 (Pa. Super. 2013) (citations omitted)). It is the function of the Court to interpret an insurance contract. *Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011). "The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

"Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Amer. Auto. Ins. Co.*, 658 F.3d at 321; *see also Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548, 551 (1967). "Words of common usage must be 'construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms.'" *Amer. Auto. Ins. Co.*, 658 F.3d at 320 (quoting *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006), citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999)). "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983).

Under Pennsylvania law, "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint

in the action.'" *Holy Ghost Carpatho-Russian Greek Catholic (Orthodox) Church of the Eastern Rite of Phoenixville, Pa. v. Church Mut. Ins. Co.*, 492 F.App'x 247, 249 (3d Cir. 2012) (*quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)). "A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage." *Mut. Ben. Ins. Co. v. Haver*, 555 Pa. 534, 538, 725 A.2d 743, 745 (1999). "An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 609, 2 A.3d 526, 541 (2010); *see also Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 152 A.2d 484, 488 (1959) ("where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril"). "To determine whether a claim potentially falls within the scope of a policy, [the Court] compares 'the four corners of the insurance contract to the four corners of the complaint.'" *State Auto. Mut. Ins. Co. v. Lucchesi*, 563 F. App'x 186, 189 (3d Cir. 2014) (quoting *Jerry's Sport Center, Inc.*, 606 Pa. at 609, 2 A.3d at 541). In reviewing the allegations contained in the underlying complaint, the allegations must be viewed as true, and be liberally construed in the insured's favor. *Jerry's Sport Center, Inc.*, 606 Pa. at 610, 2 A.3d at 541.

## B. The Duty to Defend under the Terms of the Utica Policy

Utica argues that the Underlying Complaint alleges that Plaintiffs' injuries occurred as a result of the negligent operation and use of an automobile. "Construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by."

*Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 403 Pa. 603, 607, 170 A.2d 571, 573 (1961) ("'But for' causation, *i.e.*, a cause and result relationship," was sufficient to trigger coverage).

The Underlying Complaint alleges that Mr. Lark was operating his vehicle with attached trailer when he attempted to make a left turn and due to his negligent operation and use of the auto caused injuries to Plaintiffs. Underlying Compl. ¶¶ 8, 10-11, 13, & 22. There is no question that the allegations demonstrate a causal connection between the injuries and the operation and use of the auto. *Id.* The Auto Exclusion excludes coverage for bodily injury arising out of the operation or use of an auto and therefore Utica argues that it has no duty to defend.

Utica further argues that the Underlying Complaint does not allege that the injuries "arose out of" or "resulted from" mobile equipment. The Underlying Complaint contains three references to the trailer attached to Mr. Lark's vehicle, and one reference to lawn care equipment. Paragraph 7 alleges that Mr. Lark was operating his vehicle "*with trailer* en route to a landscaping job." Underlying Compl. ¶ 7 (emphasis added). Paragraph 8 alleges that Mr. Lark was operating his vehicle "*pulling a two axle trailer with lawn care equipment aboard*." *Id.* ¶ 8 (emphasis added). Finally, in setting forth the negligence claims Plaintiffs allege that their injuries were the result of Mr. Lark's negligence "in failing to have [his] vehicle under proper control and operating said vehicle at an excessive speed *given the trailer equipment that was being pulled*." *Id.* ¶¶ 13.j & 22.j (emphasis added).

The allegations of the Underlying Complaint do not contain allegations that Plaintiffs' injuries "resulted from" or "arose out of" Mobile Equipment so as to trigger a duty to defend

under the Supplemental Coverage for Mobile Equipment or the exception to the Auto Exclusion. The Policy's Supplemental Coverage for Mobile Equipment and the exception to the Auto Exclusion both require a cause and effect relationship between the bodily injuries and mobile equipment. The Policy's Supplemental Coverage for Mobile Equipment contains unambiguous language providing coverage for bodily injury "resulting from mobile equipment." (Docket No. 1-1 at 75 (amended).) Similarly, the language in the exception to the Auto Exclusion is unambiguous, providing that the Auto Exclusion does not apply to bodily injury that "arises out of 'autos' or mobile equipment covered under Mobile Equipment Coverage." (Docket No. 1-1, at 76 (amended).) "Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Amer. Auto. Ins. Co.*, 658 F.3d at 321. The injuries here were causally connected to the operation of the automobile, not the mobile equipment aboard the trailer.

Plaintiffs do not dispute that the injuries arose out of Mr. Lark's negligent operation of an automobile; nor could they as it is the factual basis of the personal injury action. Moreover, Plaintiffs cannot argue that the mobile equipment itself explicitly "caused" the injuries. Plaintiffs' position is an implicit concession that as an initial matter the Auto Exclusion applies. Plaintiffs focus attention on the use of mobile equipment at the time of the accident to argue that the Auto Exception is inapplicable. Plaintiffs explicitly argue that "Lark's lawnmower was causally connected to the underlying accident as a matter of law, *because it was in use* (being loaded/unloaded) at the time of the collision, and but for it being so used on this occasion, the accident would not have occurred." Pls.' Br. Supp. at 14 (Docket No. 41) (emphasis added).

Plaintiffs contend that Utica cannot deny coverage based on the Auto Exclusion. The

Auto Exclusion provides that Utica will not pay for bodily injury "that arises out of the . . . '*loading or unloading*' of . . . mobile equipment owned by, operated by, rented to, or loaned to any 'insured'."  (Docket No. 1-1, at 76 (emphasis added).)  The Policy, however, does provide coverage even if the Auto Exclusion initially applies by explicitly stating that it "does not apply" to "'bodily injury' . . . that *arises out of 'autos' or mobile equipment* covered under the Mobile Equipment Coverage."  (Docket No. 1-1, at 76) (emphasis added).[1]  Relying on this exception to the Auto Exclusion, Plaintiffs argue that these two provisions, read together, mean that coverage is provided for injuries that arise out of the "loading or unloading" of mobile equipment.  As noted, it is undisputed that the Policy defines the term "loading or unloading" such that it includes the period when the equipment is being moved from one location to another by an automobile.  Thus, Plaintiffs' argument is that if mobile equipment is being moved from one location to another when the accident occurs, that circumstance is sufficient to satisfy the Policy's requirement that the injuries "result from" or "arose out of" mobile equipment.

Having concluded that there is no causal connection between the injuries resulting from the automobile accident and the mobile equipment aboard the trailer, the Court now turns to Plaintiffs' primary argument that as a matter of law the movement of mobile equipment from one location to another at the time of the accident is sufficient to trigger coverage under the Policy.  First, the Court revisits the Underlying Complaint's factual allegations to determine if they are sufficient to trigger coverage under Plaintiffs' interpretation of the Policy.  *Jerry's Sport Ctr. Inc.*, 606 Pa. at 609, 2 A.3d at 541.  Rather than looking for a cause and effect relationship between the injuries and the mobile equipment, the question is now whether the Underlying

---

[1]    Utica denies that the Underlying Complaint sufficiently alleges covered mobile equipment, however, for purposes of the present motions the Court assumes that the "lawn care equipment aboard" the trailer referenced in the Underlying Complaint is mobile equipment covered by the Policy.

15

Complaint sufficiently alleges that the mobile equipment was being moved from one location to another when the accident occurred so as to alert Utica that it had a duty to defend.

As stated previously, there is only a single reference to lawn care equipment in the Underlying Complaint. Underlying Compl. ¶ 8 (Mr. Lark was operating his vehicle "pulling a two axle trailer with lawn care equipment aboard"). This allegation appears to be a descriptive statement, not a statement that the presence of "lawn care equipment" had anything to do with causing the injuries. Moreover, in stating the negligence claim itself, Plaintiffs failed to allege that the negligence was in any way due to the fact that mobile equipment was being moved, or specifically stating that the injuries occurred while mobile equipment was being moved. *Id.* ¶¶ 13.j & 22.j (noting Lark did not have proper control of vehicle and drove at an excessive speed "given the trailer equipment that was being pulled" with no mention of the lawn mower aboard the trailer). The Court finds it would be a strained interpretation to conclude that the Underlying Complaint alleges that the injuries resulted from or arose out of the fact that Mr. Lark was moving mobile equipment from one location to another.

Nonetheless, given that Plaintiffs could not anticipate that the Policy at issue contained several provisions raising the possibility that coverage exists based on the interplay among the provisions, the question is whether the allegations were sufficient to place Utica on notice that it potentially had a duty to defend. *Sunoco, Inc. v. Ill. Nat'l Ins. Co.*, 226 F.App'x 104, 108-09 (3d Cir. 2007) ("insurer must defend if any claim included in the complaint may potentially fall under the policy and must continue to defend until it can confine the complaint to a claim that has no possibility of falling under the policy"). For purposes of the present motion, and in consideration of Plaintiffs' interpretation of the Policy, the Court assumes that an insurer that has

issued Supplemental Coverage for Mobile Equipment to a landscaper that uses lawn care equipment is sufficiently on notice that the claim in the Underlying Complaint may potentially fall under a Policy that provides coverage for injuries that occur while mobile equipment is being moved from one location to another. *Jerry's Sport Center, Inc.*, 606 Pa. at 610, 2 A.3d at 541 (Court must liberally construe underlying complaint allegations in insured's favor). The Court therefore now reaches Plaintiffs' central argument that the Policy provides coverage because at the time of the auto accident the insured was moving mobile equipment from one location to another.

Plaintiffs cannot rely on the Policy's affirmative coverage for mobile equipment set forth in the Supplemental Coverage for Mobile Equipment since that provision only covers injuries "resulting from mobile equipment." As noted, the language of this provision is unambiguous and contains no language indicating that coverage will be provided for injuries that occur *when mobile equipment is being moved*, regardless of causation. Plaintiffs are unable to argue that coverage is applicable without first relying on the exception to the Auto Exclusion to argue that the movement of mobile equipment is a condition sufficient to establish causation. The logical sequence of Plaintiffs' argument therefore begins with the assumption that the Auto Exclusion applies because it is undisputed that the injuries arose out of the operation or use of an auto. It is only in viewing the exception to the Auto Exclusion together with the "loading or unloading" language in the Auto Exclusion that Plaintiffs find Policy language to support their argument relying on the movement of mobile equipment.

The Court does not read the exception to the Auto Exclusion as meaning that the Policy covers injuries that occur from an auto accident while mobile equipment is being moved (or

"loaded or unloaded" as defined in the Policy).  The Auto Exclusion's reference to "loading or unloading" unambiguously requires causation between the bodily injury and the instrumentality that causes the injury, which is not present in this case.  The Court disagrees with Plaintiffs' interpretation that the Policy provides coverage if bodily injury occurs *at the same time as* a primary auto accident if mobile equipment is being moved during the accident.  When the policy phrase being interpreted is not ambiguous there must be some cause and effect relationship between the instrumentality and the injury.  *See*, *e.g.*, *Wolfe v. Ross*, 2015 PA Super 110, 115 A.3d 880, 889, *appeal* granted in part, 633 Pa. 414, 125 A.3d 408 (2015) (finding no ambiguity in "policy language exclud[ing] coverage for injuries arising out of use of a motor vehicle" where it was undisputed that use of vehicle was both proximate cause and cause in fact of injury).

Both parties rely on *Goodville Mutual Casualty Co.* for different reasons.  In *Goodville*, an auto accident occurred involving a truck that was towing a trailer.  The insurer of the trailer refused coverage based on the accident not arising out of the use of the trailer, but the Pennsylvania Superior Court found that sufficient "but for" causation existed between the trailer and the accident to trigger coverage, stating:

> 'But for' causation, *i.e.*, a cause and result relationship, is enough to satisfy this provision of the policy. Unquestionably the trailer was in 'use' at the time of the accident, since it was being used for the very purpose of its existence, *viz.*, to transport a horse.  But for the fact of its being so used on this occasion, O'Malley's automobile would not have collided with it.

*Goodville Mut. Cas. Co.*, 403 Pa. at 607–08, 170 A.2d at 573.  Plaintiffs rely on this case to argue that the mobile equipment aboard the trailer in this case is akin to the trailer in *Goodville* and that it was being used at the time of the accident such that sufficient causation exists to

trigger coverage. The Court agrees with Utica that the mobile equipment being carried aboard the trailer is more akin to the horse being carried by the trailer in *Goodville*. In this case there is no dispute that Mr. Lark's trailer was in use while attached to his vehicle so that the entire unit qualified as an auto within Mr. Lark's auto insurance policy.

In *Erie Ins. Exchange v. Eisenhuth,* 305 Pa.Super. 571, 451 A.2d 1024 (1982) the insured sought coverage under an auto insurance policy for injuries sustained when he was shot by a gun while sitting in an auto. The Superior Court denied coverage finding that there was no causative factor between the use or maintenance of the vehicle and the injuries sustained. *Id.* 451 A.2d at 1025. The Court found that the insured happened to be in the vehicle when he was shot, but there was no causal connection. *Id.* at 1026. Plaintiffs distinguish this case based on its facts; namely, that the vehicle just happened to be nearby an accident, but the use of the vehicle did not cause the injury, and the lack of causation is clear. However, the proper focus in analogizing *Eisenhuth* to this case is on the instrumentality that caused the injury. In *Eisenhuth* it was the gunshot that caused the injuries while the victim happened to be in a vehicle, whereas in this case it was the auto that caused the injuries while the mobile equipment just happened to be there at the same time.

The Pennsylvania Superior Court relied on *Eisenhuth* in a later case for the proposition that a "finding that the harm arose from an instrumentality or external force other than the motor vehicle itself will defeat a claim that the vehicle contributed to the cause of the injuries." *Lucas-Raso v. Am. Mfrs. Ins. Co.*, 441 Pa. Super. 161, 166, 657 A.2d 1, 3 (1995). The Court has found that the injuries in this case arose from the auto accident, not the mobile equipment. Applying the general proposition to this case leads to the conclusion that the harm arose from an

instrumentality or external force other than the mobile equipment aboard the trailer, and thus defeats Plaintiffs' claim that the mobile equipment contributed to the cause of the injuries. *See also Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*, 136 F. App'x 489, 491–92 (3d Cir. 2005) (noting that causation is subject to the limitation that if the relevant injury is caused by "an instrumentality or external force other than the" instrumentality insured seeks to have covered, the insurer is not required to provide coverage).

The Court finds that the Policy does not provide coverage for bodily injuries that result from an auto accident that occurs while mobile equipment is being moved from one location to another. The Policy only provides coverage for bodily injuries that "result from" mobile equipment, or that "arises out of" mobile equipment. Both of these terms as appearing in this Policy are unambiguous and require a causal connection between the injuries and the instrumentality that causes the injuries. In this case the injuries only occurred from the automobile accident, not the mobile equipment.

Based on the above discussion, the Court finds that the Underlying Complaint alleges injuries arising out of the negligent operation of an automobile and Plaintiffs are unable to demonstrate that the injuries were causally connected to mobile equipment so as to invoke Utica's duty to defend under the Policy. The Policy provides coverage for damages due to bodily injury caused by an occurrence during the policy period. Pursuant to the Auto Exclusion, the Policy does not cover bodily injury that arises out of the operation or use of an auto owned by, operated by, rented to, or loaned to any insured. The Underlying Complaint seeks damages for bodily injury arising out of Mr. Lark's negligent use of an automobile. Because the Policy excludes coverage for claims arising out of the use of an automobile, the Underlying Complaint

does not assert a claim potentially within the scope of the Policy and therefore Utica has no duty to defend.

### C.  There is No Ambiguity or Conflict

Even if there were a causal connection between the injuries and the mobile equipment Utica argues that the Mobile Equipment Exclusion would work to exclude coverage as the Policy does not cover injuries "that arise[] out of transporting mobile equipment by an 'auto' owned by, operated by, rented to, or loaned to any 'insured.'"  (Docket No. 1-1, at 38.)   As noted, Plaintiffs argue that the term "transporting" is ambiguous because it is not defined within the Policy.  The term "transporting" is not ambiguous.  It is a word of common usage and must be construed in its natural, plain, and ordinary sense.  *Amer. Auto. Ins. Co.*, 658 F.3d at 320.   The common ordinary meaning of the term "transport" is "to transfer or convey from one person or place to another." *See Merriam-Webster*, http://unabridged.merriam-webster.com/unabridged/transport (last visited 10/26/17).

Given that the term is not ambiguous, Plaintiffs argue that the terms "transporting" and "loading or unloading", both meaning the activity of moving the mobile equipment from one place to another, are in conflict and therefore the Policy must be read to include coverage. According to Plaintiffs, the conflict arises because the exception provides coverage for the movement of mobile equipment while the Mobile Equipment Exclusion excludes coverage for the same activity.  The Court finds no conflict between the terms.

The Mobile Equipment Exception is limited to situations where mobile equipment is being transported "by an 'auto' owned by, operated by, rented to, or loaned to any 'insured'". (Docket No. 1-1, at 38.)   In this case Mr. Lark was transporting mobile equipment on an auto

that he owned and operated as the insured.  The Mobile Equipment Exclusion is not in conflict with the exception to the Auto Exclusion because the exclusion would apply in cases where the mobile equipment is being transported by an auto not owned by, operated by, rented to, or loaned to Mr. Lark.  Thus, even if a causal connection was alleged the Mobile Equipment Exception would apply.

### D.  Duty to Indemnify

Where the insurer has no duty to defend, it does not have a duty to indemnify.  *Kvaerner Metals,* 589 Pa. 317, 330 n.7, 908 A.2d 888, 896 n.7 ("because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify.").  Accordingly, because Utica has no duty to defend, it likewise has no duty to indemnify.

### E.  Bad Faith

As the Court has determined that Utica had no duty to defend and no duty to indemnify Mr. Lark under the express language of the Policy, it likewise must conclude that Utica did not act in bad faith in denying coverage and not providing him a defense.  *See Hammond v. U.S. Liability Ins. Co. & Group*, 643 F. App'x 92 (3d Cir. 2016) (citing *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012)) (noting that "it is a 'rare' case in which an insurer is liable for bad faith when there is no duty to provide coverage.").  Therefore, Plaintiffs' bad faith claim will be dismissed, as well.

## V.  Conclusion

For the foregoing reasons the Court finds that Utica does not have a duty to defend or indemnify under the terms of the Policy.  Accordingly, Defendant's Motion for Summary Judgment (Docket No. 44) will be granted and Plaintiffs' Motion for Summary Judgment will be

denied (Docket No. 40).

An appropriate Order will be entered.

By the Court:

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated:  October 27, 2017

cc/ecf:  All counsel of record.